UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
AMIRON DEVELOPMENT CORP., HERZEL MEIRI
and ITZHAK KHATAN ,

                                 HON. JOANNA SEYBERT

                   **Plaintiffs,**

                                 Case No.: 12-cv-3036 (JS/ETB)

    -against-

STEWART SYTNER, HILARY SYTNER a/k/a
HILARY BERLIN, THOMAS P. MEGAS,
CEFEIDA, SA, SCOTT WAGMAN, MILTON
MILLER, and DAVID WISEMAN,

                   **Defendants.**

-----------------------------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO

# <u>DEFENDANTS' MOTIONS TO DISMISS</u>

A.J. GALLO ASSOCAITES, PC

ATTORNEYS FOR THE PLAINTIFFS

445 NORTHERN BOULEVARD, SUITE 11

GREAT NECK, NEW YORK 11021

(516) 342-5880

**NOVEMBER 15, 2012**

Plaintiffs Amiron Development Corp. Herzel Meiri and Itazhak Katan submit this Memorandum of Law in opposition to the motions made by Defendants Stewart Sytner ("Synter"); Hilary Syntner a/k/a Hilary Berlin ("Berlin"); David Wiseman ("Wiseman"); and Scott Wagman ("Wagman") each seeking dismissal of the complaint filed in this matter (the "motions").

## **PRELIMINARY STATEMENT**

Plaintiffs filed this action seeking money damages incurred as a direct result of, inter alia, the alleged unlawful and deceptive acts of mail fraud; wire fraud; securities fraud; and common law fraud, committed in concert by the defendants upon plaintiffs. The Complaint names seven separate defendants, six individuals and one corporate entity, all of which have appeared in this action except Defendant Milton Miller and Cefeida, SA. Defendant Thomas P. Megas, has appeared pro-se in this matter but has apparently not joined in on the pending motions. As alleged in the verified complaint of Plaintiffs', Defendants, led by Syntner and Megas, orchestrated, crafted, created and carried out an "investment" scheme to convert and embezzle the sum of over One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) from plaintiffs. The complaint further alleges that through a structured patterns of lies, deceit, manipulations and misrepresentations, the defendants conspired to defraud, and did so defraud, plaintiffs, as well as other victims, out of large sums of money. It is also alleged that the Defendants' scheme was carried out through the U.S. mails and wires and involved a pattern of predicate acts in this District and elsewhere. (Complaint at Paragraphs 27-49 and 59-62, and 81-86).

As an initial matter, it should be noted that the allegations set forth in the complaint are corroborated by the exhibits annexed to the complaint. Conversely, defendants' moving papers contain merely unsworn general denials, conclusory, self-serving assertions, and sketchy- at- best excuses for why they were involved with the subject "investment" scheme peddled by defendants. Tellingly, no sworn affidavits or other documentary evidence disproving or even contradicting plaintiffs' allegations are offered therein. In fact, in this regard, Defendant Sytner does not even deny his involvement with the underlying "scheme" as just the preliminary exhibits annexed to the complaint would render it almost nonsensical to do so.

Curiously, while defendants Wagman, Wiseman and Berlin adamantly, albeit superficially, deny "having anything to do with the [this case]", they all do however, at the same time tacitly acknowledged that they were <u>in some fashion</u> involved with and have at least some nexus to the scheme alleged in the complaint. This fact begs the question of why then where these defendants involved at all? It is submitted that the answer to this questions is that they were involved for their own personal again by lending the creditability of their professional credentials to help "sell" plaintiff on the investment "scheme". Moreover, even a quick internet search clearly reveals the fact the <u>Defendant Megas, Synter, Wagman, Wiseman and Miller</u> have <u>a long, convoluted "business" history together</u>.

Accordingly, it is plaintiffs' contention that the complaint in this matter is more than sufficient to withstand the motions *sub judice* and that this matter should thus be allowed to proceed to discovery where a full factual record can be developed for the Court's consideration.

## **LEGAL ARGUMENT**

A. **Standard of review under Rule 12(b)(6)**

In considering a motion under Rule 12(b)(6), the task of the court is "merely to assess

the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980). *See also, Shpak v. Curtis*, 2011 U.S. Dist. *LEXIS* 109011, (a motion to dismiss "requires the court to examine the legal, rather than factual, sufficiency of a complaint"). Thus it is said that "[t]he issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims". *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Based on the foregoing it is clear that a court "must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor." *Bernheim v. Litt*, 79 F.3d 318, 312 (2d Cir. 1996). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). (In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". Dismissal under Rule 12(b)(6) is not warranted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of claim that would entitle him to relief". See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Viewed in the light of the above standard, it is submitted that the respective motions of the defendants' to dismiss should be denied by this Honorable Court as the plaintiffs' complaint in this matter, taken together with the exhibits annexed thereto, alleges more than sufficient factual details supporting the elements necessary to the causes of action pleaded therein. *See Wilson v. Austin*, 11-cv-4595 (EDNY).

  **B.**   **Claims of Defendant Stewart Sytner**

Defendant Stewart Syntner's motion papers attempt to classify plaintiffs as merely "disgruntled investors". Not only does such a classification discount the fate suffered by plaintiffs at the hands of defendants, but, perhaps more importantly, serves an admission that defendants purposefully "sold" an "investment" to plaintiffs.

Defendant Sytner also claims and appears to make much of the fact that that this Court lacks subject matter jurisdiction because this case supposedly "involves personal harm suffered overseas…" Such a statement ignores the plain facts of the matter at hand. Although plaintiffs' funds were wired to the account of a Spanish corporation in Spain, this was done at the direction of defendants for the purposes, one would logistically assume, to evade prosecution in the United States. Plaintiffs' funds were wired from a local, U.S. Bank, and consisted of funds earned from plaintiffs' U.S. operations. Thus to claim that plaintiff seeks extra-territorial application of *RICO* and U.S. Securities Law is frankly nonsensical. Defendants should not be offered the privilege of benefiting from their deceitful foresight of having the money they methodically converted wired overseas. Plaintiffs' "investment" was solicited in the U.S. and orchestrated by U.S. citizens who defrauded other U.S. citizens. Thus it is not only clear that plaintiffs, contrary to defendant Sytner's specious contentions, do not seek to extend *RICO* or U.S. Securities Law liability "over the world", but it is equally clear that this Court possess subject matter jurisdiction over this action. *Wiwa v. Royal Ducth Pertol. Co.*, 2002 WL 319887 (S.D.N.Y. 2002).

Apart from the foregoing, even a cursory review of the allegations contained in the complaint, and of the exhibits annexed thereto, regarding the <u>Bougainville Gold Mine scheme</u> clearly satisfies the pleading requirements necessary to establish predicate acts of Racketeering activity and acts of mail and wire fraud on the part of defendant Sytner and his cohorts. *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies*, 75 f.3d 801, 812 (2d Cir. 1996).  *See also Bridge v. Phoenix Bond & Indemnity Co.*, 128 s. Ct. 2131 (2008) (reliance on fraudulent statements of defendants not prerequisite to *RICO* claim).

### C. Claims of the other Moving Defendants

The sum and substance of the claims of the other moving defendants, namely, Wiseman, Wagman and Berlin, appears to be simply that plaintiffs fail to sufficiently plead facts evidencing their involvement in the underlying scheme to defraud plaintiffs. However, moving past the general, conclusory denials of defendants' as set forth in their moving papers, taken together, the allegations in the complaint as well as the exhibits clearly set forth, in sufficient fashion, allegations of said defendants' participation in the underlying fraudulent scheme.

As mentioned supra, defendants Wiseman and Wagman have a long history of questionable business associations with Sytner, Megas, and Miller, and, along with defendant Berlin, used their professional credentials to wrongfully and purposefully persuade plaintiffs into participating in and falling prey to the enterprises of defendants as alleged in the complaint.

In light of the foregoing, it is not possible to reasonably conclude that the allegations set forth in the complaint regarding the actions of moving defendants do not suffice to survive a motion to dismiss.  *Nasik Breeding & Research Farm Ltd. V. Merck & Co.*, 165 F. Supp.2d 514, 537 (S.D.N.Y. 2001).

### CONCLUSION

In light of the foregoing, Plaintiffs pray that the respective motions of defendants to dismiss plaintiffs' complaint in this matter be denied in all respects, and that the Court grant any such further relief as to the court may seem just and proper.

Dated: Great Neck, New York
November 15th, 2012

Respectfully submitted

/s/ Anthony J. Gallo___

Anthony J. Gallo, Esq.