UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
AMIRON DEVELOPMENT CORP., HERZEL MEIRI,
and ITZHAK KHATAN,

                    Plaintiffs,

                                         MEMORANDUM & ORDER
          -against-                      12-CV-3036(JS)(ETB)

STEWART SYTNER, HILARY SYTNER a/k/a
HILARY BERLIN, THOMAS P. MEGAS,
CEFEIDA SA, SCOTT WAGMAN, MILTON
MILLER, and DAVID WISEMAN,

                    Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:     Anthony J. Gallo, Esq.
                    AJ Gallo Associates P.C.
                    445 Northern Boulevard, Suite 11
                    Great Neck, NY 11021

For Defendants:
Stewart Sytner      Matin Emouna, Esq.
                    Law Offices of Matin Emouna
                    110 Old Country Road, Suite 3
                    Mineola, NY 11501

Hilary Sytner       Joseph R. Conway, Esq.
                    LaRusso & Conway
                    300 Old Country Road, Suite 341
                    Mineola, NY 11501

Thomas P. Megas     Thomas P. Megas, pro se
                    522 Le Beauvoir
                    Verbier 1936
                    Suisse

Scott Wagman        Scott Wagman, pro se
                    398 Felter Avenue
                    Hewlett, NY 11557

David Wiseman       Jason J. Rebhun, Esq.
                    Jason J. Rebhun, P.C.
                    353 Amsterdam Avenue, #9S
                    New York, NY 10024

```
Cefeida SA &        No appearances
Milton Miller
```

SEYBERT, District Judge:

Plaintiffs Amiron Development Corporation ("Amiron"), Herzel Meiri, and Itzhak Khatan (collectively, "Plaintiffs") commenced this action against Defendants Stewart Sytner ("Sytner"),[1] Hilary Sytner a/k/a Hilary Berlin ("Berlin"), Thomas P. Megas, Cefeida SA, Scott Wagman, Milton Miller, and David Wiseman asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and New York common law arising out of Plaintiffs' investment in a gold mine in Papua New Guinea. Presently before the Court are motions to dismiss filed by Defendants Wagman, Berlin, Sytner, and Wiseman. For the following reasons, Defendants Wagman, Berlin, and Wiseman's motions are GRANTED, and Defendant Sytner's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I.    <u>Factual Background</u>[2]

In or around April 2009, Defendants Sytner and Megas

---

[1] The Court notes that the spelling of Defendant Sytner's name is not consistent throughout the Complaint. (<u>See</u> Compl. ¶ 17 (using three different spellings--"Syntner," "Sytner," and "Synter"--to refer to the same individual).)

[2] The following facts are drawn from Plaintiffs' Complaint and the documents attached thereto and are presumed to be true for the purpose of this Memorandum and Order.

approached Plaintiff Khatan with an "investment proposal" to mine, refine, and export gold from the Panguna Region of Bougainville, Papua New Guinea. (Compl. ¶¶ 31, 34-35.) "Defendants"[3] told Plaintiff Khatan that they possessed exclusive rights to develop and mine in that region of Papua New Guinea and that such rights "were extremely valuable and rare for outsiders." (Compl. ¶¶ 36-37.) Defendant Sytner represented that two independent geologists familiar with the region conducted due diligence and that the reports and samples that the geologists produced "were found satisfactory." (Compl. ¶ 40.)

Initially, "Defendants" told "Plaintiffs" that the minimum investment was $2.5 million; however, this was contradicted by a document titled "Operating Plan" that was given to Plaintiffs by "Defendants" which provided for a smaller investment of $1,363,500. (Compl. ¶¶ 38-39.) The Operating Plan asserted that an investment of $1.36 million would yield over $77 million in profits in the first year alone. (Compl. ¶ 39.) Plaintiffs ultimately invested approximately $1.25 million in the project, which the Complaint asserts was in exchange for shares in Defendant Cefeida SA. (Compl. ¶ 41.) The funds were wired on or around July 27, 2009; however, no

---

[3] The Court notes that the Complaint often refers to the defendants and the plaintiffs collectively as "Defendants" and "Plaintiffs" throughout the Complaint.

shares of Cefeida SA were ever issued. (Compl. ¶¶ 41, 43 & Ex. F.)

The Complaint attaches a copy of the agreement purportedly memorializing the investment (the "Agreement"). (Compl. Ex. E.) The Agreement, dated June 23, 2009, is between non-party Katan Group and Defendant Cefeida SA and non-party Intermediares Geston Services SA. (Compl. Ex. E, Agreement ¶ 1.) Plaintiff Khatan signed on behalf of the Katan Group and Defendants Megas and Sytner signed on behalf of Cefeida SA and Intermediares Geston Services SA. (Compl. Ex. E, Agreement ¶ 1.) The Agreement does not mention the other Plaintiffs or Defendants nor does it appear to provide for the issuance of shares of Cefeida SA stock. It does, however, detail how investors would be compensated and how profits would be distributed. (Compl. Ex. E, Agreement ¶ 4.3.) The Agreement also contained a choice-of-law provision, providing for the application of the "British law of Queensland," Australia (Compl. Ex. E, Agreement ¶ 15) and an arbitration clause that provided as follows:

> In the event that there is any dispute pertaining to any aspect of this agreement the parties agree to arbitrate in Queensland, Australia or[] before an arbitrator nominated by the equivalent of the Queensland Bar and being a lawyer of no less than 20 years experience, and the decision of the arbitrator shall be final and binding upon the parties to this

> agreement. Any such arbitration shall be
> held in terms of British Common contract
> law, being a partial common law
> jurisdiction. The arbitrator at his sole
> discretion shall determine the rules and
> procedures to be followed in the
> arbitration.

(Compl. Ex. E, Agreement ¶ 9.)

The Agreement was amended on July 13, 2009, in relevant part, as follows:

> 1. Any arbitration as per the original
>    agreement see Paragraph 9 shall be
>    herein amended to read New York State
>                    . . .
> 3. Any misrepresentation or fraudulent
>    contractual statements shall be subject
>    to paragraph 9 as herein amended. This
>    is also referred to in banking as the
>    bad boy clause.

(Compl. Ex. E, Amendment.) The Amendment was signed by Plaintiff Khatan and Defendants Sytner and Megas.

In or around December 2009, Defendant Sytner emailed Plaintiff Khatan stating that gold had already been mined and refined and was waiting to be shipped. (Compl. ¶ 47 & Ex. G.) However, when Plaintiffs sent a non-party "representative" to visit the mine in or around June 2010, they discovered that "defendants did nothing of what they agreed to do and simply spent and squandered plaintiffs 'investment' [sic] money for their own personal purposes." (Compl. ¶ 46.) "Defendants" were also able to "extort" $50,000 from Plaintiffs "by stranding

their representative in the jungles of Papua New Guinea for days without contact with the outside world." (Compl. ¶ 46.)

Plaintiff Khatan was not satisfied with the level of communication between himself and Defendants Sytner and Megas; thus, on or around July 29, 2010, he had his attorney send a letter to Sytner and Megas requesting information on how Plaintiff Khatan's investment was being used to achieve the goals set out in the Operating Plan and demanding, among other things, an itemized and detailed accounting of his initial investment. (Compl. ¶ 44 & Ex. G.) Defendant Sytner's response, which is neither detailed in the Complaint nor attached thereto, was, according to the Complaint, "equally unnerving" and a "continued smoke screen to draw attention away from the malfeasance and nonfeasance of defendants." (Compl. ¶ 45.)

Thereafter, Plaintiffs Khatan and Meiri traveled to Papua New Guinea to visit the mine, but were "only led around in circles and never brought to witness the mining operation." (Compl. ¶ 47.) The Complaint asserts that "[D]efendants" continue to be unresponsive "[t]o date." (Compl. ¶ 49.)

Plaintiff Amiron and Defendants Berlin, Wagman, and Wiseman are not mentioned at all in the factual section of the Complaint or the documents attached thereto, and Defendant Miller is mentioned only once--he apparently introduced Sytner

to a friend of Khatan who thereafter introduced Sytner to Khatan. (Compl. ¶ 17.)

II. <u>Procedural Posture</u>

Plaintiffs commenced this action on June 18, 2012 asserting the following claims against all Defendants: (1) substantive RICO under 18 U.S.C. § 1962(a)-(c) (Count 1); (2) RICO conspiracy under § 1962(d) (Count 2); (3) securities fraud under Section 12(a)(2) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 (Count 3); (4) common law fraud (Count 4); (5) conversion (Count 6); (6) unjust enrichment (Count 7); (7) negligence (Count 10); and (8) negligent misrepresentation (Count 11). The Complaint also asserts claims for (9) breach of fiduciary duty against Defendants Sytner, Wagman, and Megas (Count 8) and (10) for aiding and abetting their alleged breach against all Defendants (Count 9).[4] Defendant Megas answered the Complaint <u>pro se</u> on behalf of himself and Cefeida SA. (Docket Entry 4.) Defendants Wagman and Wiseman answered the Complaint and filed motions to dismiss. (Docket Entries 5-7, 9, 18.) Defendants Sytner and Berlin also moved to dismiss. (Docket Entries 14, 16.)

On October 1, 2012, Defendant Sytner filed a letter seeking clarification of a Docket Entry entered by the Clerk of the Court that stated that this action was ineligible for

---

[4] There is no Count 5 in the Complaint.

compulsory Court-Annexed Arbitration pursuant to Local Civil Rule 83.7. (Docket Entry 17.) Defendant Sytner, who was obviously not familiar with the Local Civil Rule, stated that this action should be subject to arbitration pursuant to the arbitration provision in the Agreement. Judge Boyle addressed the issue briefly at a conference on October 19, 2012, explaining that Court-Annexed Arbitration is separate and distinct from the applicability of a private agreement to arbitrate. (Docket Entry 20.) Plaintiffs and Defendant Wiseman articulated their views regarding the applicability of the arbitration provision in letters dated October 25 and 29 and November 6, 2012. (Docket Entries 22, 24-25.) To date, however, no one has filed a motion to compel arbitration.

Pending before the Court are the motions to dismiss filed by Defendants Sytner, Berlin, Wagman, and Wiseman.

DISCUSSION

Before addressing the merits of the pending motions, the Court must make two points. First, notwithstanding the strong federal policy favoring arbitration, see Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010), the Court has no authority to sua sponte enforce an arbitration provision, see Matter of Arbitration Between Standard Tallow v. Kil-Mgmt. A/S, 901 F. Supp. 147, 151 (S.D.N.Y. 1995); Suchodolski Assocs., Inc. v. Cardell Fin. Corp., Nos. 03-CV-

4148, 04-CV-5732, 2006 WL 10886, at *4 (S.D.N.Y. Jan. 3, 2006).
Therefore, the Court will not be addressing the applicability of
the arbitration provision here absent a formal motion to compel.[5]
Second, a non-lawyer cannot represent the interests of an entity
pro se.  See United States v. Twenty Miljam-350 IED Jammers, 669
F.3d 78, 91 (2d Cir. 2011) ("[A] corporation is not allowed to
appear in federal court except by a licensed attorney, and [a
pro se litigant] as a non-attorney is not allowed, in federal
court, to represent anyone other than himself." (citations
omitted)).   Therefore, although Defendant Megas purported to
answer on behalf of Defendant Cefeida SA, he had no authority to
do so.  The Court hereby GRANTS Defendant Cefeida SA thirty days
from the date of this Memorandum and Order to obtain counsel to
answer or otherwise respond to the Complaint.   If Defendant
Cefeida SA fails to obtain counsel within the time prescribed,
it risks the entry of default.

        With respect to the pending motions, the Court will
first summarize the applicable standards of review before
addressing their merits.

---

[5] The Court also notes that it could not analyze the
applicability of the arbitration provision at this time, as the
Agreement is governed by foreign law which has not been provided
to the Court.

I.   Standards of Review under the Federal Rules of Civil
     Procedure

     A.   Under Rule 12(b)(1)

          "A case is properly dismissed for lack of subject
matter jurisdiction under Rule 12(b)(1) when the district court
lacks the statutory or constitutional power to adjudicate it."
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In
resolving a motion to dismiss for lack of subject matter
jurisdiction, the Court may consider affidavits and other
materials beyond the pleadings to resolve jurisdictional
questions.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d
167, 170 (2d Cir. 2008), aff'd, --- U.S. ----, 130 S. Ct. 2869,
177 L. Ed. 2d 535 (2010).  The Court must accept as true the
factual allegations contained in the complaint, but it will not
draw argumentative inferences in favor of the plaintiff because
subject matter jurisdiction must be shown affirmatively.  See
id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d
196, 198 (2d Cir. 1992).  The plaintiff bears the burden of
establishing subject matter jurisdiction by a preponderance of
the evidence.  Morrison, 547 F.3d at 170.

B.   Under Rule 12(b)(6)[6]

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under the now well-established Iqbal/Twombly standard, a complaint satisfies Rule 8 only if contains enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

This "plausibility standard," which governs motions to dismiss under Rule 12(b)(6), is governed by "[t]wo working principles." Iqbal, 556 U.S. at 670, 678; accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[6] Although, by answering, Defendants Wagman and Wiseman waived their right to seek dismissal under Rule 12(b)(6), see FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."), the Second Circuit has held that Rule 12(b)(6) motions made after the close of the pleadings "should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)," see Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). As the standard for deciding a motion pursuant to Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim," id., the Court need not engage in a separate analysis of Defendants Wagman and Wiseman's motions.

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 (a pleading that offers "labels and conclusion" or "naked assertion[s]" devoid of "further factual enhancement" does not satisfy Rule 8). Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citation omitted); accord Harris, 572 F.3d at 72.

C.    Under Rule 9(b)

To state a claim sounding in fraud or mistake, Rule 9(b) imposes a heightened pleading standard; "the circumstances constituting fraud or mistake must be stated with particularity." FED. R. CIV. P. 9(b). The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," in order to survive a motion to dismiss. Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted). This heightened pleading standard applies to common law fraud claims as well as securities fraud claims under

Section 10(b), Rule 10b-5, and Section 12(a)(2) and certain elements of substantive RICO claims. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000) (Section 10(b) and Rule 10b-5); Rombach, 355 F.3d at 170 (Section 12(a)(2)); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178-79 (2d Cir. 2004) (RICO).

II.  Motions to Dismiss

The Court will address the motions filed by Defendants Wagman, Berlin, and Wiseman collectively and will separately address Defendant Sytner's motion.

A.  Defendants Wagman, Berlin, and Wiseman's Motions

Defendants Wagman, Berlin, and Wiseman argue that the claims against them must be dismissed because they are not specifically mentioned in the factual section of the Complaint or in the over 140 pages of exhibits attached thereto. The Court agrees. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief,'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)), and, therefore, fails to state a claim under Rule 12(b)(6).

Further, although the Complaint occasionally refers to actions taken by Defendants collectively (see, e.g., Compl. ¶ 40 ("All Defendants, acting in concert and in furtherance of their

scheme to defraud plaintiffs, continued to solicit the investment of plaintiff's [sic] . . . ."); id. ¶ 47 ("Defendants repeatedly insisted that the purported shipment of gold that plaintiffs were awaiting was either delayed by inclement weather in the region, issues with customs and/or freight forwarders."), such statements are belied by the documents attached as exhibits to the Complaint (see, e.g., id. Exs. C, G). Additionally, such "'group pleading' fails to give each defendant fair notice of the claims against it," Holmes v. Allstate Corp., No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), adopted by 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012), and, thus, fails to satisfy either the notice-pleading requirements of Rule 8 or the heightened pleading standard under Rule 9(b), see id. (stating that "group pleading" violates Rule 8); Mills, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); S.E.C. v. U.S. Envtl., Inc., 82 F. Supp. 2d 237, 241 (S.D.N.Y. 2000) (stating that a plaintiff cannot satisfy Rule 9(b) "by making vague allegations about the defendants as a unit"); cf. DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Accordingly, Defendants Wagman, Berlin, and Wiseman's motions to dismiss are GRANTED, and the claims asserted against them are hereby DISMISSED.

B.    Defendant Sytner's Motion

Defendant Sytner moves to dismiss only Plaintiffs' RICO claims[7] on two grounds:  (1) for lack of subject matter jurisdiction and (2) for failure to state a claim.  The Court will address each separately.

1.    Subject Matter Jurisdiction

Defendant Sytner argues that this Court lacks subject matter jurisdiction over Plaintiffs' RICO claims because the principle actions and events underlying Plaintiffs' claims occurred outside of the United States.  Although Defendant Sytner is correct that the extraterritorial application of RICO is limited, the Second Circuit has clearly stated that "the question of a statute's extraterritorial reach is properly analyzed as a merits question pursuant to FED. R. CIV. P. 12(b)(6), not as a question of subject matter jurisdiction raised by FED. R. CIV. P. 12(b)(1)."  Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32 (2d Cir. 2010).

---

[7] Although Defendant Sytner asserts that he is moving to dismiss all of the claims asserted against him in the Complaint, his arguments pertain solely to the RICO claims.  Thus, it is more appropriately characterized as a partial motion to dismiss.

Accordingly, Defendant Sytner's motion to dismiss for lack of subject matter jurisdiction is DENIED.

### 2. Failure to State a Claim

To state a RICO claim under Section 1962(a), (b), or (c), a plaintiff must plead seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)—(c)). "The failure of any one element is fatal to a RICO claim." Scheiner v. Wallace, 832 F. Supp. 687, 699 (S.D.N.Y. 1993). Defendant Sytner argues, inter alia, that Plaintiffs have failed to plead a pattern of racketeering activity.[8] The Court agrees.

To establish a "pattern of racketeering activity" a plaintiff must plead at least two predicate acts of racketeering activity committed within a ten year period that are related and that "amount to or pose a threat of continued criminal activity." Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting H.J. Inc. v. Nw. Bell Tel.

---

[8] Plaintiffs did not address this argument in their opposition brief.

Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)); see also 18 U.S.C. § 1961(5) (defining "pattern of racketeering" as "at least two acts of racketeering activity" committed in a ten year period); Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). Assuming, arguendo, that Plaintiffs have sufficiently alleged two related predicate acts of racketeering activity, the Court finds that the Complaint fails to plead continuity.

The continuity requirement "can be satisfied either by showing a 'closed-ended' pattern--a series of related predicate acts extending over a substantial period of time--or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool, 520 F.3d at 183.

a. Closed-Ended Continuity

"To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" Cofacrèdit, 187 F.3d at 242 (quoting H.J. Inc., 492 U.S. at 242); accord Spool, 520 F.3d at 184. Although there are a variety of non-dispositive factors relevant to the inquiry of whether closed-ended continuity exists, including the length of time over which the alleged predicate acts took place, the number of victims, the number of

17

participants, and the presence of separate schemes, GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 467 (2d Cir. 1995), "closed-ended continuity is primarily a temporal concept," Cofacrèdit, 520 F.3d at 242. "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement," H.J. Inc., 492 U.S. at 242, and the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time,'" Cofacrèdit, 187 F.3d at 242; see also GICC, 67 F.3d at 467-68 (collecting cases).

Here, the Complaint lists the following predicate acts "of fraud carried out, inter alia, through the U.S. mails and wires":

(a)  unspecified representations that Plaintiff Khatan's $1.25 million would be used to finance the gold-mining operation;

(b)  unspecified representations that Defendants had sufficient capital to secure Plaintiff Khatan's investment;

(c)  unspecified representations that Defendant Sytner was a diplomat with influence of the U.S. and Papua New Guinea governments;

(d)  unspecified representations that the gold mine was operational and capable of producing gold for refining and sale;

(e)  unspecified representations that Plaintiffs would be issued shares in Cefeida SA in exchange for their investment;

(f)  unspecified representations that "multiple bogus term sheets and agreements" related to the mining operation were "true and accurate;"

(g)   unspecified representations that Plaintiff Khatan's $1.25 million investment was for "legitimate and true business purposes,"

(h)   unspecified representations that Defendant Cefeida SA was "a valid and subsisting business entity," and

(i)   unspecified representations that "the additional $50,000 paid to defendants were used to buy gold to re-sell."

(Compl. ¶ 60(a)-(i).)  These acts,[9] however, with one exception, all occurred between April 2009 and July 2009--when Defendants Sytner and Megas first approached Plaintiff Khatan with the investment opportunity to when Plaintiff Khatan wired his investment--as they all relate to representations made to incentivize Plaintiff Khatan to invest.  The representations regarding the additional $50,000 payment occurred in June 2010 while Plaintiffs' representative was "stranded" in the jungles of Papua New Guinea.  Thus, as all of the predicate acts in the Complaint occurred within a fourteen-month period,[10] Plaintiffs have failed to plead closed-ended continuity.

---

[9] Again, the Court is assuming for the purposes of this Memorandum and Order that these acts all constitute predicate acts sufficient to state a claim under RICO.  The Court, however, highly doubts that these acts, as pled, are sufficient to satisfy Rule 9(b).

[10] See also Compl. ¶ 19 (asserting that the acts giving rise to Plaintiffs' RICO claims occurred "[o]ver the course of about two years.").

b.   <u>Open-Ended Continuity</u>

"To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  <u>Cofacrèdit</u>, 187 F.3d at 242.  Here, although the Complaint asserts that "[t]he multiple acts of racketeering amount to, and pose a threat of, continued criminal activity" (Compl. ¶ 61), such a conclusory statement of an element of Plaintiffs' RICO claim will not defeat a motion for summary judgment.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555; <u>cf.</u> <u>Iqbal</u>, 556 U.S. at 678 (stating that the "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient).

Further, even if the Court interprets the Complaint liberally, which it is not required to do,[11] the facts suggest that Cefeida SA, and Sytner and Megas as its directors, engaged in "a serious, but . . . relatively short-lived scheme to defraud a handful of victims through racketeering activity." <u>Cofacrèdit</u>, 187 F.3d at 244.   In other words, once these Defendants fraudulently induced Plaintiff Khatan to enter into the Agreement and invest in the gold mining operation, "the scheme essentially came to its conclusion."  <u>First Capital</u>, 385

---

[11] <u>See</u> <u>In re Dayton</u>, 786 F. Supp. 2d 809, 811 n.1 (S.D.N.Y. 2011) (noting that pleadings submitted by lawyers are not entitled to the less stringent standards and liberal interpretations afforded to pleadings drafted by <u>pro</u> <u>se</u> parties).

F.3d at 181.  The Second Circuit has repeatedly held that such
an "'inherently terminable' scheme does not imply a threat of
continued racketeering activity." Cofacrèdit, 187 F.3d at 244
(quoting GICC, 67 F.3d at 466).[12]  Thus, the Court finds that the
alleged predicate acts do not "amount to or pose a threat of
continued criminal activity." H.J. Inc., 492 U.S. at 239.

As Plaintiffs have failed to adequately allege a
pattern of racketeering activity, they have failed to state a
claim for relief under RICO and those claims against Defendant
Sytner are hereby DISMISSED.  Further, as a substantive RICO
violation is a prerequisite to a RICO conspiracy claim, see
First Capital, 385 F.3d at 164, 182; DeSilva v. N. Shore-Long
Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 525 n.13
(E.D.N.Y. 2011), Plaintiffs' RICO conspiracy claim against
Defendant Sytner is also DISMISSED.

---

[12] Compare First Capital, 385 F.3d at 181 (finding no open-ended
continuity in an alleged bankruptcy fraud scheme because "[o]nce
Sohrab had fraudulently conveyed his assets, which he allegedly
accomplished by July 17, 1997 when he filed for bankruptcy, the
scheme essentially came to a close"), and GICC, 67 F.3d at 466
(finding no open-ended continuity in an alleged scheme to
deprive the plaintiff of its assets because "[i]t defies logic
to suggest that a threat of continued looting activity exist[ed]
when, as plaintiff admitt[ed], there [wa]s nothing left to
loot"), with Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d
Cir. 1994) (finding continuity in a securities fraud scheme
where the defendants "ha[d] been trying to continue to sell"
securities).

III. <u>Leave to Replead</u>

Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *5 (E.D.N.Y. Aug. 13, 2012) (citing <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010)). Here, there is nothing in the Complaint or in Plaintiffs' opposition to the motions to dismiss to suggest that Plaintiffs have a viable RICO claim against Defendant Sytner or any claim for relief against Defendants Berlin, Wagman, and Wiseman. Rather, Plaintiffs' opposition brief, which purports to address the arguments in all four motions to dismiss, is a mere six-pages long, ignores most of the arguments raised by the moving Defendants, and repeatedly and conclusorily states that the Complaint in its present form "clearly satisfies the pleading requirements." (Pl. Opp., Docket Entry 27, at 5.)[13]

---

[13] Plaintiffs did not include page numbers in their brief; the Court is referring to the page numbers inserted by ECF.

Accordingly, the Court DENIES leave to amend and hereby DISMISSES these claims WITH PREJUDICE.

CONCLUSION

For the foregoing reasons, Defendants Berlin, Wagman, and Wiseman's motions to dismiss are GRANTED, and Defendant Sytner's partial motion to dismiss is GRANTED IN PART and DENIED IN PART. Further, the Court sua sponte GRANTS Defendant Cefeida SA forty-five days from the date of this Memorandum and Order to obtain counsel to answer or otherwise respond to the Complaint.

Counsel for Plaintiffs is ORDERED to serve a copy of this Memorandum and Order on pro se Defendants Megas and Wagman and on Defendant Cefeida SA and to file proof of service within three days of the date of this Memorandum and Order.

The Clerk of the Court is directed to terminate Defendants Berlin, Wagman, and Wiseman as Defendants, Cross Claimants, and Cross Defendants in this action and to amend the docket to reflect that Defendant Cefeida SA has yet to appear.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March   29  , 2013
           Central Islip, NY